EDUCATIONAL ELECTRONICS, INC. & another *vs.* BROOKLINE TRUST COMPANY. September 12, 1974. The plaintiff Educational Electronics, Inc., and its parent corporation, Visual Electronics Corporation (Visual), appeal from a decree which, inter alia, dismissed their bill to enforce a revolving credit agreement entered into in early May, 1970, with the defendant and five other banks to obtain periodic

loans for Visual in specified maximum amounts. There was no error. The construction and operation of the agreement, as stipulated therein, are governed by the law of New York. See *Nissenberg* v. *Felleman,* 339 Mass. 717, 719 (1959); Restatement 2d: Conflict of Laws, §§ 187, 204(a). The judge correctly ruled that the defendant's obligation to make the loan requested in late May of 1970 was conditioned upon Visual's net current assets remaining "at not less than $11,000,000 at all times prior to July 1, 1970," as required by § 5A(8) of the agreement, and that because the condition was not satisfied, the defendant's obligation never arose. See *Mascioni* v. *I. B. Miller, Inc.* 261 N.Y. 1, 4 (1933). This follows from § 4B of the agreement which set forth "conditions," including the occurrence of the "events of default" enumerated in § 6, to which "[t]he obligation of each [b]ank to make each loan" was subject. One of these "events of default" was breach of the net-current-assets requirement. The fact that this requirement is also characterized in §§ 5A and 6 as one of the "covenants of the company" (Visual), rather than as a "condition" of lending, is immaterial as it acquired the status of a "condition" by operation of § 4B. In our view the closing paragraph of § 6, permitting "[b]anks having 75% of the aggregate [c]ommitments" under the agreement to terminate all obligations of all the banks thereunder and to declare all notes immediately due and payable upon the occurrence of any "event of default," did not enlarge the defendant's individual obligation to make individual loans under § 4B. Such an interpretation avoids inconsistency between these provisions (*National Conversion Corp.* v. *Cedar Bldg. Corp.* 23 N.Y. 2d 621, 625 [1969]) and gives effect to "their plain meaning" (*Laba* v. *Carey,* 29 N.Y. 2d 302, 308 [1971], rearg. den. 30 N.Y. 2d 694 [1972]). While Visual's net current assets had actually fallen far below the $11,000,000 minimum at least a month before the defendant executed the agreement, the record affords no basis for charging the defendant with knowledge thereof at the time it executed the agreement or for vitiating the defendant's right to rely upon the "condition." Indeed, the most recent balance sheet then available to the defendant showed net current assets in excess of $13,000,000 as of December 31, 1969. Nor do we find support in law or in the terms of the agreement for the plaintiffs' contention that the defendant, having received unofficial information implying that a default had occurred, which later proved to be the case, was obliged to await receipt of a new balance sheet before it could invoke its right under § 4B(2). *Zelazny* v. *Pilgrim Funding Corp.* 41 Misc. 2d (N.Y.) 176 (1963), relied upon by the plaintiffs, contains nothing to the contrary.

*Decree affirmed with costs of appeal.*

*Morris M. Goldings* for the plaintiffs.
*William T. Loomis* for the defendant.